# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JEFFREY S. MANNING,

      Plaintiff,

  v.                                    Case No. 2:18-cv-110
                                          Judge Michael H. Watson
COMMISSIONER OF SOCIAL         Magistrate Judge Chelsey M. Vascura
SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Jeffrey Scott Manning, ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15), and the administrative record (ECF No. 7.) For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

          **I.**        **PROCEDURAL BACKGROUND**

Plaintiff protectively filed his applications for Period of Disability, Disability Insurance Benefits, and Supplemental Security Income on April 26, 2012, eventually later amending his onset date of disability to February 16, 2012. (ECF No. 7-5, PAGEID #250.) On January 9,

2014, following initial administrative denials of Plaintiff's applications, a hearing was held before Administrative Law Judge (the "ALJ") Ryan Glaze. (ECF No. 7-2, PAGEID #73–127.) On January 29, 2014, ALJ Glaze issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID #53–72.) This decision became the final decision of the Commissioner when the Appeals Council denied review on April 9, 2015. (*Id.* at PAGEID #38–42.)

Plaintiff thereafter timely commenced a civil action in this Court, *Manning v. Commissioner of Social Security*, Case No. 2:15-cv-2316. Finding that ALJ Glaze had improperly failed to even mention the opinion of Plaintiff's treating psychologist, Dr. Daniel Judge, this Court remanded Plaintiff's claim to the Appeals Council on June 12, 2016. (ECF No. 7-10, PAGEID #921–32.) The Court stated that Plaintiff's other assertion of error, regarding ALJ Glaze's failure to properly consider the opinion of Plaintiff's treating psychiatrist, Dr. Marc Clemente, had "at least some merit," but found it unnecessary to analyze this asserted error in light of the decision to remand. (*Id.* at PAGEID #931.) However, the Court also stated that "on remand, the ALJ may consider Plaintiff's remaining assignment of error if appropriate." (*Id.*)

A subsequent administrative hearing was held on June 1, 2017, with ALJ Jeannine Lesperance. On July 3, 2017, ALJ Lesperance issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (ECF No. 7-9, PAGEID #810–27.) On December 13, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id.* at PAGEID #801–06.) Plaintiff commenced the present action on February 9, 2018. (ECF No. 1.)

## II. FACTUAL BACKGROUND

### A. Plaintiff's Hearing Testimony

At the administrative hearing on June 1, 2017, Plaintiff testified that he lived alone. (ECF No. 7-9, PAGEID #859.) At the time of this hearing, he was still working part-time as a kitchen helper at Bob Evans, where he had been working since at least January 2015. (*Id.* at PAGEID #860; ECF No. 7-15, PAGEID #1291.) Plaintiff testified that he drove about twice a week and he also rode a bus to work. (ECF No. 7-9, PAGEID #861.) He earned a Bachelor of Arts degree in human resource management in 2014. (*Id.* at PAGEID #862.) He spent five years in the Air Force with an honorable discharge. (*Id.*)

When testifying as to his employment with the Bob Evans, he stated he cleans dishes and unloads trucks. (*Id.* at PAGEID #863.) He said that he "mostly get[s] along with everybody," except for one employee who did not like him (*Id.* at PAGEID #877) and that he had been dating someone since 2009. (*Id.* at PAGEID #877, 880.) However, Plaintiff also testified that his mental health symptoms affect his social skills and his social ability with meeting people and making friends. In contrast to his earlier testimony about getting along with most of his co-workers, Plaintiff stated, "I just don't get along with people." (*Id.* at PAGEID 879.)

Plaintiff testified that working more hours caused fatigue, which led to prolonged sleeping and "depression would set in." (*Id.* at PAGEID #873.) He also struggled to control his blood sugar level, which was affected by stress and exertion. (*Id.* at PAGEID #874.) Plaintiff testified that he sometimes had poor motivation and neglected household chores, noting this occurs when he "gets feelings of overwhelming depression." (*Id.* at PAGEID #883–84.) When asked if he was able to perform a less active job, he stated he would not be able to due to impaired concentration. (*Id.* at PAGEID #884.)

Plaintiff also testified that his mother was going blind and that he took her places and helped her shop. (*Id.* at PAGEID #878.) He said that he did his own shopping, managed his own finances, and cared for his personal needs. (*Id.* at PAGEID #878–79.) He said that he enjoyed comic books, watching sports, walking, and reading newspapers. (*Id.* at PAGEID #880.) He testified that if he had time and transportation, he would attend more vocational classes at the Veterans Administration ("VA"). (*Id.* at PAGEID #882.)

**B.     Opinion of Plaintiff's Treating Psychiatrist, Marc Clemente, M.D.**

Plaintiff treated with psychiatrist, Marc Clemente, M.D. at the VA. Dr. Clemente first diagnosed Plaintiff with major depressive affective disorder, recurrent episode, severe degree, without mention of psychotic behavior on August 2, 2011. (ECF No. 7-7, PAGEID #375.) Dr. Clemente continued to treat Plaintiff through 2017.

During the relevant period, Dr. Clemente offered three opinions as to Plaintiff's functioning. On September 12, 2013, Dr. Clemente opined that Plaintiff was markedly limited in his work abilities to accept instruction from or respond appropriately to criticism from supervisors or superiors; perform and complete work tasks in a normal work day or work week at a consistent pace; perform at production levels expected by most employers; respond appropriately to changes in a work setting; maintain personal appearance and hygiene; and tolerate customary work pressures. (ECF No. 7-8, PAGEID #795–97.) Dr. Clemente also opined that Plaintiff was moderately impaired in his work abilities to appropriately respond to co-workers or peers; carry through instructions and complete tasks independently; maintain attention and concentrations for more than brief periods of time; remember locations, work day procedures, and instructions; be aware of normal hazards and take necessary precautions; and behave predictably, reliably, and in an emotionally stable manner. (*Id.* at PAGEID #795–96.) Dr. Clemente further opined that Plaintiff's condition was likely to deteriorate under the stress of

4

full-time employment. (*Id.* at PAGEID #797.) Dr. Clemente concluded that Plaintiff is "already vulnerable because of his depression." (*Id.*)

On July 23, 2014, Dr. Clemente's treatment notes reflect that he agreed to write a letter on Plaintiff's behalf to the Ohio Department of Jobs and Family Services in connection with Plaintiff's application for food stamps. (ECF No. 7-15, PAGEID #1493.) Dr. Clemente's notes state that "[t]he letter will essentially say that [Plaintiff] suffers from depression which makes it difficult for him to maintain and sustain employment." (*Id.*) The letter itself does not appear to be included in the record.

Finally, on May 24, 2017, Dr. Clemente updated his September 2013 opinion by increasing the severity of several previously-noted limitations. At this time, Dr. Clemente opined that Plaintiff had extreme impairments of abilities to accept instruction from or respond appropriately to criticism from supervisors or superiors; perform and complete work tasks in a normal work day or work week at a consistent pace; perform at production levels expected by most employers; and tolerate customary work pressures. (ECF No. 7-16, PAGEID #1896–98.) Dr. Clemente also opined that Plaintiff now had marked impairments of the abilities to carry out instructions independently and to maintain attention and concentration for more than brief periods of time. (*Id.*) Dr. Clemente attributed these increased impairments to the fact that Plaintiff "has become more depressed." (*Id.* at PAGEID #1898.) His remaining evaluations of Plaintiff's limitations remained unchanged.

C. **Opinion of Plaintiff's Treating Psychologist, Daniel Judge, Psy.D.**

Daniel Judge, Psy.D., Plaintiff's treating psychologist, met with Plaintiff weekly beginning in November 2013 for treatment of his major depressive disorder. (ECF No. 7-10, PAGEID #899.) In a letter dated January 13, 2014, Dr. Judge reported that Plaintiff was also taking veteran support classes for major depressive disorder. The full extent of Dr. Judge's

5

opinion as to Plaintiff's impairments was, "[i]t is the opinion of this writer that [Plaintiff's] mental health concerns do significantly impact his functional capacity due to problems of motivation and mood." (ECF No. 7-8, PAGEID #799.) Dr. Judge did not quantify the impact of Plaintiff's mental health concerns or propose any limitations that would be necessary for Plaintiff to return to or continue working.

## III. THE ALJ'S DECISION

On July 3, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (ECF No. 7-9, PAGEID #810–27.) The ALJ noted that Plaintiff meets the insured status requirements through December 31, 2018. (*Id.* at PAGEID #812.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had engaged in substantially gainful activity during the period of April 1, 2015 to June 30, 2016. (*Id.*) However, there has been continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity: from his amended alleged disability onset date of February 16, 2012 through March 31, 2015, and then again beginning July 1, 2016, he has not engaged in

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

substantial gainful activity, though he continued to work part-time. (*Id.* at PAGEID #813.) The ALJ found that Plaintiff has the severe impairments of obesity, diabetes, and a depressive disorder. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID #814.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> The [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except he can frequently climb ramps and stairs and frequently stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolds. He must avoid work around hazards such as unprotected heights and exposure to moving mechanical parts. He cannot engage in occupational driving. He can perform simple and moderately complex but routine tasks at a moderate pace but without strict time and production demands. He can interact occasionally with coworkers and supervisors and frequently with the general public. He can adapt to occasional changes in work duties that are explained.

(*Id.* at PAGEID #817.)

In assessing Plaintiff's RFC, the ALJ afforded partial weight to Dr. Clemente's September 2013 opinion and May 2017 opinion, and no weight to Dr. Clemente's July 2014 treatment note indicating that Plaintiff could not maintain and sustain employment. (*Id.* at PAGEID #821–22.) The ALJ assigned limited weight to Dr. Judge's 2014 letter opinion, noting she agreed that Plaintiff's mental health "significantly impacts" his work function, but found that his mental impairments impacted Plaintiff's RFC only to a moderate extent, and that his limitations were sufficiently addressed by her RFC determination. (*Id.* at PAGEID #822.)

Relying on the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform his past relevant work as a host and kitchen helper with respect to the period beginning

---

[2]A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

7

January l, 2016, as well as jobs that exist in significant numbers in the national economy. (*Id.* at PAGEID #824–26.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at PAGEID #826.)

In his Statement of Errors, Plaintiff asserts that the ALJ's discussion of Dr. Clemente's opinion is unclear and fails to provide a clear analysis that can be easily understood by subsequent reviewers. (Statement of Errors 5–8, ECF No. 9.) Plaintiff next argues that the ALJ failed properly evaluate the opinion of his treating psychologist, Dr. Judge. (*Id.* at 9–15.)

## IV.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v.*

*Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff raises two issues in his Statement of Errors (ECF No. 9), each of which contend that the ALJ did not properly consider the opinions of Plaintiff's treating mental health professionals (Dr. Clemente and Dr. Judge).

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). Where a treating source's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

## A.     The ALJ did not err in her consideration of Dr. Clemente's opinion.

The ALJ credited Dr. Clemente's recommended limitations for mild- and moderately-rated impairments, but discounted his opinions that Plaintiff suffered from more severe limitations. Specifically, in his updated 2017 opinion, Dr. Clemente opined that Plaintiff had marked impairments of his abilities to (1) respond appropriately to changes in a work setting; (2) maintain personal appearance and hygiene; (3) carry out instructions independently; and (4) maintain attention and concentration for more than brief periods of time; and that Plaintiff had extreme impairments in his abilities to (1) accept instruction from or respond appropriately to criticism from supervisors or superiors; (2) perform and complete work tasks in a normal work day or work week at a consistent pace; (3) perform at production levels expected by most employers; and (4) tolerate customary work pressures. (ECF No. 7, PAGEID #1896–98.) The ALJ explained she afforded Dr. Clemente's opinion "partial weight" because his recommended limitations as to marked and extreme impairments are not supported by his treatment notes or other evidence of record:

> While normally controlling weight would be given to an opinion of disability from a treating physician, it is not so entitled if it is not well-supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with other substantial evidence of record (20 CFR 404.1527(c)(2) and 416.927(c)(2)). In this case, I give the check-box assessments of Dr. Clements partial weight, but only to the extent that he endorsed limits that were mild to moderate as defined in our listings and not as defined on the forms, either as originally completed in 2013 or as updated in 2017. I give these little weight for the reasons described in the summary of the objective medical evidence above. First, Dr. Clemente was well

11

> aware that this claimant was actually working significant hours at a restaurant. The marked and even extreme limits are wholly inconsistent with the claimant's actual work activities, sustained over a significant period of time at the substantial gainful activity level. They are also inconsistent with the vast weight of the evidence showing him to have normal moods, attentiveness, and ability to follow instructions, particularly in his VA-related activities. I give no weight to the July 2014 letter that was apparently sent in support of the claimant's request to receive food stamps, as it is inconsistent with the weight of evidence for the same reasons explained above. The claimant obtained and sustained employment at Bob Evans for well over two years. Additionally, the letter was not expressed in any specific symptomatic or functional terms, which renders it less persuasive.

(ALJ Decision 13, ECF No. 7-9, PAGEID #822.)

The Undersigned finds no error with the ALJ's consideration and weighing of Dr. Clemente's opinion. The ALJ articulated the weight she afforded the opinion and properly declined to afford it controlling weight on the grounds it was inconsistent with the "vast weight of the evidence," including findings of Plaintiff's normal mood, attentiveness, and ability to follow instructions. (*Id.*). Dr. Clemente's own treatment notes often reflected Plaintiff's normal mood (*e.g.*, ECF No. 7-7, PAGEID #489; ECF No. 7-15, PAGEID #1332, 1355; ECF No. 7-16, PAGEID #1702) and Plaintiff's statements to Dr. Clemente suggested that his depression was closely linked to his unemployment or underemployment (*e.g.*, ECF No. 7-7, PAGEID #460; ECF No. 7-15, PAGEID #1235; ECF No. 7-16, PAGEID #1506) and improved when he found work (ECF No. 7-7, PAGEID #424; ECF No. 7-15, PAGEID #1331, 1354).

Similarly, Dr. Clemente's findings of marked or extreme limitations in carrying through instructions and completing tasks independently, and ability to maintain personal hygiene and appearance, conflicted with records from the VA documenting Plaintiff's ability to carry out tasks such as dining area set up and food preparation with minimal or no direction (*e.g.*, ECF No. 7-7, PAGEID #620; ECF No. 7-8, PAGEID #731, 761, 767; ECF No. 7-16, PAGEID #1588, 1626, 1766), and his appropriate grooming and hygiene (*e.g.*, ECF No. 7-7, PAGEID #425, 640; ECF No. 7-8, PAGEID #731; ECF No. 7-15, PAGEID #1251, 1352, 1382, 1457; ECF No. 7-8,

12

PAGEID #1848). They also conflicted with Plaintiff's own statements that he was able to carry out both written and verbal instructions "very well" and could groom himself and maintain self-care with no need for reminders from others (ECF No. 7-6, PAGEID #275, 278).

Finally, the ALJ noted that Dr. Clemente's statements that Plaintiff had some marked and extreme limitations (related to the abilities to respond appropriately to changes in a work setting, accept instruction from or respond appropriately to criticism from supervisors or superiors, perform and complete work tasks in a normal work day or work week at a consistent pace, perform at production levels expected by most employers, and tolerate customary work pressures) conflicted with Plaintiff's steady part-time work at Bob Evans over several years, of which Dr. Clemente was aware. (ECF No. 7-9, PAGEID #822, 960; ECF No. 7-15, PAGEID #1291, 1331).

In his reply brief, Plaintiff argues that "[t]he presence of this [conflicting] evidence should not be enough to discredit multiple consistent treating source opinions" and faults the ALJ for "focus[ing] on the inevitable conflicting evidence." (Reply 3, ECF No. 15.) However, the ALJ's first task is to evaluate medical opinions, even those of treating sources, for consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(2). Having found that Dr. Clemente's assessed impairments and recommended limitations are inconsistent with other substantial record evidence, the ALJ did not err in declining to give Dr. Clemente's opinions controlling weight.[3]

---

[3] The ALJ also declined to credit the 2014 letter Dr. Clemente was to have written to ODJFS stating that "[Plaintiff] suffers from depression which makes it difficult for him to maintain and sustain employment." This, too, was not in error, as Dr. Clemente's assessment is directly contradicted by Plaintiff's steady part-time work at Bob Evans.

Finally, Plaintiff argues that the ALJ did not discharge her duty to give good reasons for discounting Dr. Clemente's opinion because she used two different phrases ("partial weight" and "little weight") to describe the weight she assigned. (Statement of Errors 7, ECF No. 9.) Plaintiff contends that "[t]his confusing explanation makes it very difficult for subsequent reviewers to determine and understand the amount of weight accorded to Dr. Clemente's opinions and the reasoning behind the amount of weight accorded." (*Id.*) However, the Court finds it clear from the ALJ's explanation that she afforded Dr. Clemente's opinions "partial weight," in the sense that she credited his assessed impairments at the mild and moderate levels, but did not credit his marked and extreme assessments. Further, the Court finds it clear that the ALJ was referring to the marked and extreme assessments when she ascribed "little weight" to Dr. Clemente's opinion. The Undersigned does not find the ALJ's explanation confusing, and therefore concludes that the ALJ did not violate the treating physician rule or otherwise err in her consideration and weighing of Dr. Clemente's opinion.

**B.      Any error by the ALJ in consideration of Dr. Judge's opinion was harmless.**

The ALJ found Dr. Judge's January 13, 2014 opinion to be of little persuasive value, explaining:

> In January 2014, treating psychologist Daniel Judge, Psy.D., opined that the claimant's mental health concerns significantly impacted his functional capacity due to problems of motivation and mood (Exhibit 8F at 2). While I concur that the claimant's mental health "significantly impacts" the claimant's work function in the sense that I find his mental impairments to be severe, it does not do so to more than a moderate extent, and it is accommodated by the limits adopted in the above-identified residual functional capacity. Dr. Judge consistently noted the claimant to present as normal at his visits and have euthymic moods. Dr. Judge also noted that most of the claimant's stressors were financial and had to do with *not working enough* (making enough money) rather than stressors resulting from work activity. Additionally, as Dr. Judge failed to express this opinion in terms of specific symptoms or functional limitations, it is less persuasive. While treating providers are not required to provide function-by-function analyses, when they fail to offer specific limitations, or even explanation or evidentiary support for their opinion regarding disability, they miss the opportunity to identify specific limits that the

> factfinder can accept, reject, or evaluate. In summary, opinions so limited offer very little substance for the factfinder to weigh in light of the evidence in the record as a whole and, therefore, have little persuasive value.

(ALJ Decision 13, ECF No. 7-9, PAGEID #822.)

Although it is true that the ALJ did not undertake a detailed treating physician analysis of Dr. Judge's one-sentence opinion, any error in this instance is harmless. Dr. Judge's opinion, that Plaintiff's "mental health concerns do significantly impact his functional capacity due to problems of motivation and mood," does not discuss the severity of Plaintiff's impairments or disclose that Plaintiff is functionally limited in any particular way. The ALJ agreed that Plaintiff's mental health concerns "significantly impact" his RFC, and took these concerns into account when she included the following limitations:

> He can perform simple and moderately complex but routine tasks at a moderate pace but without strict time and production demands. He can interact occasionally with coworkers and supervisors and frequently with the general public. He can adapt to occasional changes in work duties that are explained.

(*Id.* at PAGEID #817.) The ALJ's limitations are entirely consistent with Dr. Judge's non-specific opinion about the "significant impact" of Plaintiff's mental health concerns on his functional capacity. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (noting the possibility that "if the Commissioner . . . makes findings consistent with the [treating physician's] opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."). Further, even if the ALJ were to give Dr. Judge's opinion controlling weight, Plaintiff has not explained what further limitations Dr. Judge's opinion would require. Any error by the ALJ regarding Dr. Judge's opinion was therefore harmless.

15

## VI.   DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.   PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE